**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| DONNA CROWE, individually and on behalf of all others similarly situated, | Case No.  0:23cv61065 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MANAGED CARE OF NORTH AMERICA, INC., d/b/a MCNA DENTAL | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Donna Crowe ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through her attorneys, brings this Class Action Complaint against Defendant Managed Care of North America, Inc., d/b/a MCNA Dental ("MCNA Dental"), and complains and alleges upon personal knowledge as to herself and upon information and belief as to all other matters.

## INTRODUCTION

1.      Plaintiff brings this class action against MCNA Dental for its failure to secure and safeguard her and approximately 8,923,662 other individuals' personally identifying information ("PII") and personal health information ("PHI"), including names, dates of birth, addresses, telephone numbers, emails, Social Security numbers, driver's license or government-issued identification numbers, health insurance information, Medicaid/Medicare ID numbers, and information regarding dental and orthodontic care.

2.      MCNA Dental is a dental insurance benefits provider for Medicare, Medicaid, and Children's Health Insurance Program organizations. It is headquartered in Miramar, Florida.

3.     MCNA Dental collected and retained the PII/PHI of its customers, including Plaintiff and Class members, in connection with providing dental insurance, dental care, or related services or products (collectively, "Dental Services"). On March 6, 2023, MCNA Dental learned that an unauthorized person or persons had accessed MCNA Dental's network systems. Subsequent investigation revealed that the unauthorized person(s) had access to MCNA Dental's computer system between February 26, 2023 and March 7, 2023, during which time the unauthorized person accessed and stole the sensitive PII/PHI of Plaintiff and Class members (the "Data Breach").

4.     MCNA Dental owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. MCNA Dental breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect its customers' PII/PHI from unauthorized access and disclosure.

5.     As a result of MCNA Dental's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII/PHI was accessed and stolen. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of herself and all persons whose PII/PHI was exposed as a result of the Data Breach.

6.     Plaintiff, on behalf of herself and all other Class members, asserts claims for negligence, breach of fiduciary duty, breach of implied contract, and unjust enrichment, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

*Plaintiff Donna Crowe*

7.      Plaintiff Donna Crowe is a citizen of Florida.

8.      Plaintiff receives Dental Services from MCNA Dental. As a condition of receiving Dental Services, Plaintiff was required to provide her PII/PHI to MCNA Dental.

9.      Plaintiff received Dental Services from MCNA Dental and entrusted MCNA Dental with her PII/PHI; prior to the Data Breach. MCNA Dental retained and stored Plaintiff's PII/PHI on its computer systems, including the systems affected by the Data Breach.

10.     Plaintiff's PII/PHI was accessed, disclosed to, and stolen by an unauthorized person or persons during and as part of the Data Breach.

11.     Based on representations made by MCNA Dental, Plaintiff believed MCNA Dental had implemented and maintained reasonable security and practices to protect her PII/PHI. With this belief in mind, Plaintiff provided her PII/PHI to MCNA Dental in connection with receiving Dental Services.

12.     Plaintiff takes great care to protect her PII/PHI, including her Medicare information. Had Plaintiff known that MCNA Dental does not adequately protect the PII/PHI in its possession, she would not have obtained services from MCNA Dental or agreed to provide them with her PII/PHI.

13.     As a direct result of the Data Breach, Plaintiff Crowe has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft and medical identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII/PHI; deprivation of the value of her PII/PHI; and overpayment for services that did not include adequate data security.

*Defendant MCNA Dental*

14.    Defendant MCNA Dental is a Florida corporation with its principal place of business in Miramar, Florida. MCNA Dental's headquarters are located at 3100 SW 145th Avenue, Suite #200, Miramar, Florida 33027.

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(d)(2), because: (a) there are 100 or more Class members; (b) at least one Class member is a citizen of a state that is diverse from MCNA Dental; and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

16.    This Court has personal jurisdiction over MCNA Dental because MCNA Dental is a Florida corporation and maintains its principal place of business in Florida.

17.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because MCNA Dental's principal place of business is in this District and a significant amount of the events leading to Plaintiff's causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of MCNA Dental*

18.    MCNA Dental "is a leading dental benefits manager committed to providing high quality services to state agencies and managed care organizations for their Medicaid, Children's Health Insurance Program (CHIP), and Medicare members."[1] "MCNA also offers dental plans for private employers, individuals, and families."[2]

19.    "MCNA Dental is the largest dental insurer in the nation for government-sponsored

---

[1]    *Company Overview*, MCNA DENTAL, https://www.mcna.net/en/company-overview (last accessed June 1, 2023).

[2]    *Id.*

Medicaid and CHIP programs" and has "over 5 million members across 8 states."[3]

20.     MCNA Dental's website contains a Notice of Privacy Practices.[4] On that webpage MCNA Dental states, "One of our strengths is our ability to administer dental plans in an effective and innovative manner while safeguarding our members' protected health information."[5] MCNA Dental also claims it is "committed to complying with the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA)."[6]

21.     MCNA Dental states it must follow the privacy practices in its Notice of Privacy Practices.[7]

22.     MCNA Dental claims to protect personal health information, including names, addresses, telephone numbers, and Social Security numbers, "in all formats including electronic, written and oral information."[8]

23.     MCNA Dental acknowledges that "[t]he law says MCNA has to keep your health information private."[9] It further acknowledges that "[i]n keeping with federal and state laws and our own policy, we have a responsibility to protect the privacy of your information" and that it is "required by law to maintain the privacy and security of your protected health information."[10]

24.     MCNA Dental claims it "will not use or share your information other than as

---

[3] *Home*, MCNA DENTAL, https://www.mcna.net/en/home (last accessed June 1, 2023).

[4] *Our Privacy Practices*, MCNA DENTAL, https://www.mcna.net/en/privacy (last accessed June 1, 2023). The Notice explicitly states it "applies to all MCNA dental programs that are administered by" MCNA Dental. *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

described [in the Notice of Privacy Practices] unless you tell us we can in writing."[11] The Notice of Privacy Practices lists several ways that MCNA Dental may use its customers' information, including, *inter alia*, for research, to comply with the law, and to address workers' compensation claims.[12]

25.     MCNA Dental promises to "let you know promptly if a breach occurs that may have compromised the privacy or security of your information."[13]

26.     Plaintiff and Class members are, or were, persons who receive Dental Services from MCNA Dental and who entrusted MCNA Dental with their PII/PHI

*** The Data Breach ***

27.     According to the Notice of Data Breach MCNA Dental posted online, "On March 6, 2023, MCNA became aware of certain activity in our computer system that happened without our permission."[14] MCNA Dental determined that an "unauthorized third party was able to access certain systems and remove copies of some personal information between February 26, 2023 and March 7, 2023."[15]

28.     MCNA Dental's investigation of the Data Breach revealed some of its network systems were "infected with malicious code."[16] MCNA Dental admitted "a criminal was able to see

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Notice of Data Breach*, MCNA Dental (May 26, 2023), https://response.idx.us/MCNA-Information/.

[15]     *Notice Letter*, MCNA Dental (May 26, 2023), https://apps.web.maine.gov/online/aeviewer/ME/40/895b95c8-abc8-41f1-8c3f-b0415575de56.shtml (under "Notification and Protection Services" heading, click link titled "MCNA - ME Individual Notice Letters.pdf").

[16] *See id.*

- 6 -

and take copies of some information in our computer system between February 26, 2023 and March 7, 2023."[17]

29.    The information accessed, disclosed, and stolen in the Data Breach includes: "(1) demographic information to identify and contact [Class members], such as full name, date of birth, address, telephone and email; (2) Social Security number; (3) driver's license number or government-issued identification number; (4) health insurance information, such as name of plan/insurer/government payor, member/Medicaid/Medicare ID number, plan and/or group number; and (5) information regarding dental/orthodontic care."[18] MCNA Dental also states the information includes "[c]are for teeth or braces (visits, dentist name, doctor name, past care, x-rays/photos, medicines, and treatment)" and "[b]ills and insurance claims" information.[19]

### *MCNA Dental Knew that Criminals Target PII/PHI*

30.    At all relevant times, MCNA Dental knew, or should have known, that the PII/PHI that it collected and stored was a target for malicious actors. Indeed, MCNA Dental states in its Privacy Policy that it will notify its customers "promptly if a breach occurs that may have compromised the privacy or security of [their] information."[20]

31.    MCNA Dental knew or should have known of these risks. Despite such knowledge, MCNA Dental failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from cyber-attacks that MCNA Dental should have anticipated and guarded against.

---

[17] *Notice of Data Breach*, *supra* note 14.

[18] *Notice Letter*, *supra* note 15.

[19] *Notice of Data Breach*, *supra* note 14.

[20] *Our Privacy Practices*, *supra* note 4.

32.     It is well known amongst companies that store sensitive PII that sensitive information – such as the SSNs and medical information stolen in the Data Breach – is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[21]

33.     Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2023 report, the healthcare compliance company Protenus found that there were 956 medical data breaches in 2022 with over 59 million patient records exposed.[22] This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[23]

34.     PII/PHI is a valuable property right.[24] The value of PII/PHI as a commodity is measurable.[25] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[26] American companies are estimated to have spent over $19 billion on acquiring

---

[21] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 11:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[22] *See* PROTENUS, *2023 Breach Barometer*, PROTENUS.COM, https://www.protenus.com/breach-barometer-report (last accessed June 2, 2023).

[23] *See id*.

[24] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INT'L FED'N FOR INFO. PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible. . . . "), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[25] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[26] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

personal data of consumers in 2018.[27] It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

35.     As a result of the real and significant value of this material, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII/PHI, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

36.     PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[28] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[29]

37.     All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[30] According to a report released by the Federal Bureau of Investigation's

---

[27] *See* IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[28] *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HEALTHTECH MAGAZINE (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon ("*What Happens to Stolen Healthcare Data*") (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

[29] *Id.*

[30] *See* Adam Greenberg, *Health insurance credentials fetch high prices in the online black market*, SC MAG. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market.

Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen SSN or credit card number.[31]

38.     Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[32] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information – specifically, regarding a sexually transmitted disease or terminal illness – that information can be used to extort or coerce someone to do what you want them to do."[33]

39.     Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[34]

40.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has, thus, deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[31] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (Apr. 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

[32] *What Happens to Stolen Healthcare Data*, *supra* note 28.

[33] *Id.*

[34] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

### *Theft of PII/PHI Has Grave and Lasting Consequences for Victims*

41.     Theft of PII/PHI is serious. The Federal Trade Commission ("FTC") warns consumers that identity thieves use PII/PHI to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[35]

42.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[36] Research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it to, among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.

43.     With access to an individual's PII/PHI, criminals can do more than just empty a victim's bank account – they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or filing a fraudulent tax return using the

---

[35] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 1, 2023).

[36] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. §1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. §1022.3(g).

victim's information. In addition, identity thieves may even give the victim's personal information to police during an arrest.[37]

44.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[38]

45.     Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

46.     Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (*e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. *TIME Magazine* quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[39]

47.     Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records

---

[37] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed June 1, 2023).

[38] *See* Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed June 1, 2022).

[39] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

that can plague victims' medical and financial lives for years."[40] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[41] In warning consumers on the dangers of medical identity theft, the FTC states that an identity thief may use PII/PHI "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care."[42] The FTC also warns, "If the thief's health information is mixed with yours it could affect the medical care you're able to get or the health insurance benefits you're able to use."[43]

48.     A report published by the World Privacy Forum and presented at the U.S. FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

- Significant bills for medical goods and services neither sought nor received.

- Issues with insurance, co-pays, and insurance caps.

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

- Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

---

[40] Pam Dixon and John Emerson, *The Geography of Medical Identity Theft*, FTC.GOV (Dec. 12, 2017), http://www.worldprivacyforum.org/wp-content/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf.

[41] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk . . .* , *supra* note 31.

[42] *See What to Know About Medical Identity Theft*, FED. TRADE COMM'N  CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last accessed June 1, 2023).

[43] *Id.*

- As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

- Phantom medical debt collection based on medical billing or other identity information.

- Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[44]

49.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[45]

50.     It is within this context that Plaintiff and Class members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by and in the possession of people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### *Damages Sustained by Plaintiff and the Other Class Members*

51.     Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in MCNA Dental's possession; (f)

---

[44] *See* Pam Dixon and John Emerson, *supra* note 40.

[45] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

## **CLASS ALLEGATIONS**

52.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

53.     Pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiff brings this action on behalf of herself and all members of the following Nationwide Class (the "Class") of similarly situated persons:

> All persons whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all persons whose information was stored on MCNA Dental's computer systems that were affected by the Data Breach between February 26, 2023 and March 7, 2023.

54.     Excluded from the Classes are Managed Care of North America, Inc., d/b/a MCNA Dental, and its affiliates, parents, subsidiaries, successors, officers, legal representatives, assigns, agents, directors, and any entity in which MCNA Dental has a controlling interest. Also excluded from the Class are any judicial officers presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered..

55.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

56.     The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. MCNA Dental reported to the Office of the Maine

Attorney General that approximately 8,923,662 persons' information was exposed in the Data Breach.[46]

57.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members, making certification appropriate under Rule 23(b)(3). Such common questions of law or fact include, *inter alia*:

      a.  whether MCNA Dental had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

      b.  whether MCNA Dental had a duty not to disclose the PII/PHI of Plaintiff and Class members to unauthorized third parties;

      c.  whether MCNA Dental failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

      d.  whether an implied contract existed between Class members and MCNA Dental, providing that MCNA Dental would implement and maintain reasonable security measures to protect and secure Class members' PII/PHI from unauthorized access and disclosure;

      e.  whether MCNA Dental engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiff and Class members;

      f.  whether MCNA Dental breached its duty to protect Plaintiff's and Class members' PII/PHI; and

      g.  whether Plaintiff and Class members are entitled to damages, and the measure of such damages and relief.

58.     Such issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this matter and the parties' interests therein.

---

[46] *See Managed Care of North America Data Breach Notification*, ME. ATT'Y GEN., https://apps.web.maine.gov/online/aeviewer/ME/40/895b95c8-abc8-41f1-8c3f-b0415575de56.shtml (last accessed June 1, 2023).

59.     MCNA Dental engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

60.     Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII/PHI compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by MCNA Dental, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

61.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

62.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against MCNA Dental, so it would be impracticable for Class members to individually seek redress from MCNA Dental's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

63. Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1). As the proposed Class includes millions of patients, there is significant risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct. For example, injunctive relief may be entered in multiple cases, but the ordered relief may vary, causing MCNA Dental to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which it will comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

64. Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2). Class certification is also appropriate under Rule 23(b)(2). MCNA Dental, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, MCNA Dental continues to maintain its inadequate security practices, retains possession of Plaintiff's and the Class members' PII and PHI, and has not been forced to change its practices or to relinquish PII and PHI by nature of other civil suits or government enforcement actions, thus making injunctive and declaratory relief a live issue and appropriate to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

65. Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66. MCNA Dental owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding, securing, and protecting the PII/PHI in its possession, custody, or control.

67. MCNA Dental knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII/PHI and the importance of maintaining and using secure systems. MCNA Dental knew or should have known of the many data breaches that have targeted companies that stored PII/PHI in recent years.

68. Given the nature of MCNA Dental's businesses, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, MCNA Dental should have identified and foreseen the vulnerabilities in its systems and prevented the unauthorized access and dissemination of Plaintiff's and Class members' PII/PHI.

69. MCNA Dental made explicit statements on its website that they are aware of the risk of potential data breaches, that it will follow privacy laws and regulations, and that it will use reasonable methods to protect the PII/PHI in its control.

70. MCNA Dental breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiff's and Class members' PII/PHI.

71.     Plaintiff and Class members had no ability to protect their PII/PHI that was, or remains, in MCNA Dental's possession.

72.     It was or should have been reasonably foreseeable to MCNA Dental that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

73.     But for MCNA Dental's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised. The PII/PHI of Plaintiff and the Class was accessed and stolen as the proximate result of MCNA Dental's failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by, *inter alia*, adopting, implementing, and maintaining appropriate security measures.

74.     As a result of MCNA Dental's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in MCNA Dental's possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the

impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

<div align="center">

**COUNT II**
**BREACH OF FIDUCIARY DUTY**

</div>

75.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

76.     As a condition of obtaining Dental Services from MCNA Dental, Plaintiff and Class members gave MCNA Dental their PII/PHI in confidence, believing that MCNA Dental would protect that information. Plaintiff and Class members would not have provided MCNA Dental with this information had they known their information would not be adequately protected. MCNA Dental's acceptance and storage of Plaintiff's and Class members' PII/PHI created a fiduciary relationship between MCNA Dental and Plaintiff and Class members. In light of this relationship, MCNA Dental must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff's and Class members' PII/PHI.

77.     MCNA Dental has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. MCNA Dental breached that duty by failing to properly protect the integrity of the systems containing Plaintiff's and Class members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff's and Class members' PII/PHI that it collected, retained, and stored.

78.     As a direct and proximate result of MCNA Dental's breach of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (a) a substantially increased and imminent risk of identity theft; (b) the compromise, publication, and theft of their PII/PHI; (c) out-of-pocket expenses associated with the prevention,

<div align="center">

- 21 -

</div>

detection, and recovery from unauthorized use of their PII/PHI; (d) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (e) the continued risk to their PII/PHI which remains in MCNA Dental's possession; (f) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (g) overpayment for the services that were received without adequate data security.

<div align="center">

**COUNT III**
**BREACH OF IMPLIED CONTRACT**

</div>

79.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

80.     In connection with receiving health care services or employment, Plaintiff and all other Class members entered into implied contracts with MCNA Dental.

81.     Pursuant to these implied contracts, Plaintiff and Class members benefited MCNA Dental by paying monies to MCNA Dental, and provided MCNA Dental with their PII/PHI. In exchange, MCNA Dental agreed to, among other things, and Plaintiff understood that MCNA Dental would: (a) provide Dental Services to Plaintiff and Class members; (b) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI; (c) protect Plaintiff's and Class members' PII/PHI in compliance with federal and state laws and regulations and industry standards; and (d) implement and maintain reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI.

82.     The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and MCNA Dental, on the other hand. Indeed, as set forth *supra*, MCNA Dental recognized the importance of data security and the privacy

<div align="center">- 22 -</div>

of their customers' PII/PHI. Had Plaintiff and Class members known that MCNA Dental would not adequately protect their PII/PHI, they would not have paid MCNA Dental for Dental Services.

83.     Plaintiff and Class members performed their obligations under the implied contracts when they provided MCNA Dental with their PII/PHI and paid monies for products and services from MCNA Dental, expecting that their PII/PHI would be protected.

84.     MCNA Dental breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to implement and maintain adequate security protocols and procedures to protect Plaintiff's and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

85.     MCNA Dental's breach of its obligations of the implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiff and Class members.

86.     Plaintiff and all other Class members were damaged by MCNA Dental's breach of implied contracts because: (a) they paid monies (directly or indirectly) to MCNA Dental in exchange for data security protection they did not receive; (b) they now face a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (c) their PII/PHI was improperly disclosed to unauthorized individuals; (d) the confidentiality of their PII/PHI has been breached; (e) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (f) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical

identity theft they face and will continue to face; and (g) they overpaid for the services that were received without adequate data security.

## COUNT IV
## UNJUST ENRICHMENT

87.     Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

88.     This claim is pleaded in the alternative to the breach of implied contract claim.

89.     In obtaining Dental Services from MCNA Dental, Plaintiff and Class members provided and entrusted their PII and PHI to MCNA Dental.

90.     Plaintiff and Class members conferred a monetary benefit upon MCNA Dental in the form of monies paid for Dental Services with an implicit understanding that MCNA Dental would use some of that revenue to protect the PII/PHI it collects, retains, and stores.

91.     MCNA Dental accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. MCNA Dental benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used to facilitate billing and payment services, which enabled MCNA Dental to carry out its business.

92.     As a result of MCNA Dental's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for and expected, and those payments without reasonable data privacy and security practices and procedures that they received.

93.     MCNA Dental should not be permitted to retain the money belonging to Plaintiff and Class members because MCNA Dental failed to adequately implement the data privacy and

  security procedures for itself that Plaintiff and Class members paid for and expected, and that were otherwise mandated by federal, state, and local laws and industry standards.

94. MCNA Dental should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds it received as a result of the conduct and Data Breach alleged herein.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in their favor and against MCNA Dental as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent MCNA Dental from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.  Awarding Plaintiff and the Class such other favorable relief as allowable under law.

<div align="center">

**JURY TRIAL DEMANDED**

</div>

  Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED: June 5, 2023     ROBBINS GELLER RUDMAN
               & DOWD LLP
              DOROTHY P. ANTULLIS (FBN 890421)
              ALEXANDER C. COHEN (FBN 1002715)


               *s/ Dorothy P. Antullis*
              DOROTHY P. ANTULLIS

              225 NE Mizner Boulevard, Suite 720
              Boca Raton, FL  33432
              Telephone:  561/750-3000
              561/750-3364(fax)
              dantullis@rgrdlaw.com
              acohen@rgrdlaw.com

              BARNOW AND ASSOCIATES, P.C.
              Ben Barnow*
              Anthony L. Parkhill*
              Riley W. Prince*
              205 West Randolph Street, Suite. 1630
              Chicago, IL  60606
              Telephone:  312/621-2000
              312/641-5504 (fax)
              b.barnow@barnowlaw.com
              aparkhill@barnowlaw.com
              rprince@barnowlaw.com

              *Pro hac vice forthcoming*

              Attorneys for Plaintiff