UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61065-SINHAL/VALLE

DONNA CROWE, *et al.*, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

MANAGED CARE OF NORTH AMERICA,
INC., d/b/a MCNA DENTAL, *et al.*,

      Defendants.

_____/

## STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY RECORDS

THIS MATTER is before the Court upon the parties' Joint Motion for Entry of Proposed Order Regarding Discovery of Electronically Stored Information and Hard Copy records (ECF Nos. 151, 151-2).[1]  Accordingly, pursuant to the parties' joint request that the Court enter this Stipulation and Order Regarding Discovery of Electronically Stored Information and Hard Copy Records ("ESI Protocol"), the Court hereby **ORDERS**:

## I.   GENERAL GUIDELINES

1.    **General.**  The purpose of this Order is to facilitate the exchange of ESI (as defined in Federal Rule of Civil Procedure 34(a)(1)(A)) and hard copy documents in an efficient manner and in accordance with the Federal Rules.  The Parties agree to meet and confer to the extent that this Order imposes any undue burden or expense on a Party with respect to any particular discovery request.

---

[1] This Order is substantially as drafted by the parties.

2.    **<u>Scope</u>.** Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of this Court ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules. ESI produced in this litigation—and any information contained in that ESI—shall be used solely for the purpose of this action. Prohibited purposes include, but are not limited to, use in any litigation or proceeding other than in this action.

3.    **<u>Limitations and Non-Waiver</u>.** By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

4.    **<u>Variations</u>.** If any Party identifies a circumstance where application of this Order is not technologically practicable, the Party will disclose to all other Parties the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

5.    **<u>Transparency and Cooperation</u>.** The Parties acknowledge their duty to work together cooperatively throughout the discovery process and permit an appropriate level of transparency. Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Court's Guidelines, the Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI. The Producing Party does not waive their right to work product protections, and this Order is not intended to compel disclosure of work product.

II.    **PRESERVATION**

6.    The Parties represent that they have issued litigation hold notices to those custodians likely to possess potentially responsive information, and persons or entities responsible for maintenance of non-custodial sources, which likely contain potentially responsive information, and have established procedures to ensure that those notices have been received, understood, and appropriately acted upon.

III.    **IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI**

7.    **Custodians and Sources.**  The Parties shall exchange information regarding the identification, preservation, and collection of both custodial and noncustodial sources of potentially relevant ESI (e.g., email, instant messaging, Slack, Teams, shared drives, network storage, local hard drives, mobile phone applications, etc.), including information related to Defendants' current and former internal departments, divisions, committees, or teams, and individual members of such departments, divisions, committees, or teams possessing potentially relevant information.

7.1    The Parties agree to disclose the following: (a) the identity and role of individuals likely to possess potentially relevant or responsive information; (b) the locations and descriptions of non-custodial data sources (e.g., shared drives, servers, databases, shared working environments, etc.) that are likely to contain potentially relevant or responsive information; (c) the locations and descriptions of custodial data sources (e.g., any data source used for business purposes) that are likely to contain potentially relevant or responsive information, whether or not created or generated by the custodian; (d) applicable document retention policies or practices, including steps taken by Plaintiffs and Defendants to preserve documents (e.g., retention schedules or

policies, auto-delete functions, routine purging, archiving, mailbox size limits, implementation of litigation hold), or other practices likely to impact the existence or accessibility of relevant and responsive information; and (e) the locations and descriptions of any third-party data sources likely to contain relevant or responsive information (e.g., third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source. The Parties have a continuing obligation to identify any other custodial and non-custodial data sources that may contain information relevant to this litigation and preserve them.

7.2    The Parties agree to meet and confer in an effort to agree upon the following: (a) custodians from whom information will be collected or produced (including their job title, description of duties, and employment dates) and search terms to be applied to custodial documents; (b) data sources, including custodial, non-custodial, and third-party documents, which will be collected or produced; (c) the identity and scope of sources of documents and ESI to be produced without the use of technology-assisted review or search terms; and (d) applicable timeframe for collection and review of documents.

8.    **<u>Known Responsive ESI Must Be Produced</u>**.  Documents or ESI known to be responsive to a discovery request or relevant to the subject matter of this action that are regularly maintained in a known location, or in a location that is ascertainable upon a reasonable inquiry of the custodial sources identified in paragraphs 10 through 12 shall be produced, without regard to whether it was responsive to any search methodology described herein.

9.     **Discrete Document Collections / Custodian Identified Files**.  Counsel shall make reasonable efforts to identify those portions of the Parties' documents representing discrete folders or collections of information responsive to a discovery request or relevant to the subject matter of this action, such as relevant folders of ESI that are identified or segregated by a custodian as likely to be responsive (i.e., custodian-created desktop or email folders/sub-folders or shared storage repositories specific labeled or otherwise identified).  Those portions of the Parties' documents representing discrete folders or collections of information shall be collected without the use of any search methodology described herein or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping.  Notwithstanding a Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may review the contents of any such discrete collection for responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production.  The Parties will meet and confer in the event the Producing Party believes that such a review would be unduly burdensome and disproportionate to the needs of the case.

10.     **Search Queries and Methodologies.**  Pursuant to Fed. R. Civ. P. 26(f), the Parties shall confer before the initial production of documents and ESI regarding the application, if any, of search or other filtering technologies, including reasonable search terms, file types, date ranges, transparent validation procedures and random sampling, predictive coding, or other appropriate advanced technology, including systems used to track review status related to those advanced technologies.  The Parties are expected to work in a cooperative, collaborative, and iterative manner, to reach agreement upon a reasonable search methodology to achieve an appropriate level of recall and precision.  To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for

resolution by the Court or its designee.  The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.

11.     **Use of TAR**.   If a Producing Party plans to use technology-assisted review ("TAR"), also known as "predictive coding," to identify or cull documents and ESI to be reviewed or produced, the Producing Party will notify the Parties in advance to discuss an appropriate TAR Protocol for that type of review. The Parties' discussion will include whether TAR processing can be "stacked" with the application of search terms, i.e., whether TAR can be applied before the application of search terms.  If the Parties cannot reach agreement on the TAR process or protocol to be used, the matter may be submitted to the Court for resolution. By agreeing to use TAR in this action, the Producing Party does not intend to waive any rights or protections pursuant to privacy, confidentiality, attorney-client privilege, attorney work product, and any other privileges, protections, or objections to discovery.

12.     **Key Word Searching.**  If the Producing Party is identifying or culling potentially responsive materials, which are not already known to be responsive, using search terms, the Parties will meet and confer about search terms.  During the meet and confer process, the Producing Party will provide a glossary of known and relevant terminology (or equivalent) and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any.   Before implementing search terms, the Producing Party will disclose information regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), any date filters, or other culling methods after which the Receiving Party may propose additional terms or culling parameters.  The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and

confer regarding reasonable and appropriate methods to achieve an appropriate level of recall and precision, and opportunities for the Parties to propose additional search terms.  Depending on the custodial documents and ESI to be reviewed, hit reports, validation metrics, and sampling may be necessary quality control measures for search terms.

13.     **Hit Reports.**  If a Requesting Party proposes modified or additional search terms and the Producing Party claims that the resulting search terms would impose undue burden, the Parties will meet and confer to resolve disagreements over the proposed revisions to the search terms or their application. If after meeting and conferring, search terms are not agreed upon, the Producing Party shall provide a hit report regarding the specific search term string at issue.  The hit report must include the total number of documents in the collection against which the search terms were applied (de-duplicated if feasible at the time the search terms are applied), the total number of unique documents containing hits, and the total number of unique documents containing hits plus the number of unique family members.

14.     **Validation and Quality Control.**  Each Producing Party shall take reasonable steps to validate its review process (*i.e.*, using quality control measures to determine whether its production appears to be missing relevant ESI or appears to contain substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process.  The Parties will engage in an iterative and cooperative process to achieve an appropriate level of precision (the fraction of documents identified as relevant by a search or review effort, that are in fact relevant) and recall (the fraction of relevant documents that are identified as relevant by a search or review effort).  The Parties shall meet and confer to resolve any disputes over a Producing Party's validation methods in good faith.

15.     **Unsearchable Documents.**   Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, or hard copy documents, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.  Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.

16.     **Inaccessible Documents.**  If a Party believes any potentially relevant documents are not reasonably accessible, the Party will provide sufficient information about the documents (and their custodial or non-custodial sources) to enable the Parties to meet and confer in good faith about whether such documents will be produced.

17.     **Good Faith.**  The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

18.     **Continuing Obligations.**  The Parties recognize that discovery shall be an iterative and cooperative process.  The Parties will meet and confer regarding any issues as necessary and appropriate.  This Order does not address or resolve any objections to the scope of the Parties' respective and forthcoming discovery requests.

19.     **Reservation of Rights.**   The Parties retain the right, upon reviewing any productions made by another Party in this action or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources and custodians be produced.

## IV.     **FORM OF PRODUCTIONS**

20.    **File Types and Formats.**  All spreadsheets (*e.g.*, Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images.  All word processing (*e.g.,* Microsoft Word), presentation (*e.g.*, Microsoft PowerPoint), image (*e.g.,* .jpg, .gif), and PDF files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs. All media files, such as audio and video files, files shall be produced as native files with TIFF placeholder images. Emails shall be produced as TIFFs. The Parties will meet and confer on the production of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc.  In advance of depositions, the Parties reserve the right to produce TIFF versions of any previously produced native file at their discretion.

21.    **Native Files.**  Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively."  To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. Where redaction makes production of native-format files other than spreadsheets infeasible, the Parties will meet and confer to determine a reasonably usable form for the production.

22.    **TIFF Images.**  Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique

name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

23.     **Production Format for Hard Copy Documents.**   Documents that exist in hardcopy will be scanned to *.tiff image format and produced with a load file, single page TIFF images in the same format as electronic, except the metadata fields provided will be limited to those in Exhibit A to the extent the metadata is reasonably available.  For a scanned hard copy, OCR text will be provided instead of extracted text. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized[2]).  In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.  A producing Party will make their best efforts to unitize the documents correctly.

24.     **Digital Photos.**  All digital photographs will be produced as full color image files in their native file format at their original resolution.

25.     **Databases, Structured, Aggregated or Application Data.**  The Parties will meet and confer to address the production and production format of any responsive data contained in a

---

[2] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents.  Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

database or other structured or aggregated data source or otherwise maintained by an application. The Parties will cooperate in the exchange of information concerning such databases to facilitate discussions on productions and production format, including available data fields/objects and schema. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

26. **Non-English Documents.** To the extent that documents are produced that contain languages other than English, in whole or in part, the producing Party shall produce each such document in the original language or languages in which it was written when collected. The producing Party has no obligation to create a translation of the documents or any portion thereof; however, a producing Party shall produce any translations of such documents if such translations exist and are accompanied with the original document.

27. **Production Rules.** Due to the contextual relationship of ESI, the Parties will maintain family relationships for electronic data. The Parties will make relevancy and production determinations for hard copy documents at the document level.

28. **Mobile and Handheld Device Documents and Data.** If responsive, nonduplicative ESI that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that ESI shall be produced in accordance with the provisions of this protocol. To the extent that responsive, non-duplicative ESI identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of that ESI.

29. **De-NISTing.** Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

30. **Deduplication.** The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated at the family level across all collected custodial and non-custodial sources. MD5 or SHA-1 hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field.

31. **Email Threading.** No email may be withheld from production because it is included in whole or in part in a more inclusive email, although Parties may use email threading for their own internal review and other internal processes. A party need not separately log for privilege an email that is fully included in a longer email string.

32. **Embedded Files.** Embedded files, except for images embedded in emails, are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

33. **Dynamic Fields.** If possible, documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

34. **Zero-byte Files.** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.

35. **Parent-Child Relationships.** For email families, the parent-child relationships (the association between an attachment and its parent document or between embedded documents) shall be preserved. Email attachments should be consecutively produced with their parent.

36.     **Family Groups.**   A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and email or other documents together with any documents referenced by document stubs, all constitute family groups.  If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

37.     **Time Zone.**   All provided metadata pertaining to dates and times will be standardized to CST.

38.     **Bates Numbering.**  Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.  The Bates number will:

    a.      be consistent across the production;

    b.      contain no special characters; and

    c.      be numerically sequential within a given document.

For Plaintiffs, the Bates numbering should reflect the Plaintiff that made the production, e.g., PLAINTIFFLASTNAME000001.

39.     **Excluded File Types.**  Absent a particularized need, the Parties agree that there is no need to collect ESI from the following sources:

    (a)     Deleted, slack, fragmented, or other data only accessible by forensics;

    (b)     Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

(c)      On-line access data such as temporary internet files, history, cache, cookies, and the like;

(d)      Back-up data that is entirely duplicative of data that can be collected elsewhere; and

(e)      Server, system, or network logs.

40.      **Redactions.**   Other than as permitted by this Order or any order concerning confidentiality that is agreed and/or entered in this litigation, no redactions for relevance may be made within a produced document or ESI item.  Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Privilege").  Where a responsive document contains both redacted and non-redacted responsive content, the parties shall produce the remainder of the non-redacted responsive portions of the document and the text/OCR corresponding to the non-redacted portions. If documents that the Parties have agreed to produce in native format need to be redacted, they will be produced in conformance with the specifications listed in Paragraphs 41-44.

41.      **Spreadsheets.**  Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively, and the redacted native files will be produced as provided herein.

42.      **Other Documents.**  All TIFF images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.  Where reasonably possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and

replaced with the term AUTODATE to prevent the current date from being printed.  Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

43.    **Color.**   To the extent a requesting Party believes color is necessary or useful to understand or use a particular redacted document or particular set of redacted documents, and that document (or set of documents) in their un-redacted form contain color, then upon request the producing Party will promptly reproduce color TIFF images.

44.    **Load File Formats.**   ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

45.    **Metadata to Be Produced.**   The Parties shall use methods of collection and processing that preserve the integrity of document metadata.  The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is reasonably available or, in the case of metadata created during processing such as Bates numbers and CUSTODIAN, created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.  All Parties shall produce metadata for ESI productions.

46.    **Extracted Text and OCR.**   Each document, whether produced in native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein.

a.    Extracted Text (Emails, Unredacted Native ESI, and Redacted Spreadsheets).  All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files.  Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows.  Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

b.    OCR (Redacted Native ESI, Hard Copy Documents).  In the event a document, other than natively redacted spreadsheets, e.g., Excel files, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents (and the native file shall not be provided).  Document-level OCR text files shall also be provided for all hard copy scanned documents.  OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.).  Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

      c.    <u>Format of Extracted Text and OCR</u>.  The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 with BOM encoded TXT files provided in a separate folder. The number of TXT files per folder should be limited to 1,000 files.

47.    **Encryption.**  To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection with AES 256-bit encryption. All production volumes uploaded via this file sharing document repository shall remain available for download for no less than thirty (30) calendar days.  In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

48.    **Exception Files.**  The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").  The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files.  In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

## V.    <u>PROCESSING OF NON-PARTY DOCUMENTS</u>

49.    The Order shall govern productions made by any non-Party who is subpoenaed in this action unless otherwise agreed to by the Party that issues a non-Party subpoena ("Issuing Party") and the non-Party.

50.     An Issuing Party must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

51.     The Issuing Party is responsible for producing to all other Parties any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party.  To the extent practical given the data volume and load time, productions by a non-Party should be produced by the Issuing Party to all other Parties as soon as possible and within seven business days of the non-Party's production to the Issuing Party.

52.     For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## VI.   **PRIVILEGE LOGS**

53.     The Parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, common interest/joint defense, or other recognized privilege or protection from disclosure (collectively, "privilege").  The Parties agree to produce a privilege log, no later than 45 days after the date of a production from which the document would otherwise have been produced but was withheld.  A Party's failure to provide a privilege log within the time set forth herein shall not by itself constitute a waiver of any privilege.  However, the Parties shall not unreasonably fail to provide a privilege log within the time set forth herein.

54.     In the event a custodian of a producing Party is noticed for deposition, the producing Party shall, 30 calendar days prior to a scheduled deposition, inform the Party that has noticed the deposition whether all of the Custodian's responsive documents have been produced or logged.  The party noticing the deposition may elect to waive the requirements of this paragraph,

or extend the time for the party being deposed to make the disclosures required under this paragraph.

55.     Privilege logs shall be produced in a cumulative manner, incorporating on each subsequently produced privilege log any previously produced privilege logs and identifying in a searchable/sortable manner documents added since the last log update and documents for which a privilege is no longer asserted, if any, since the last log update. No listings, therefore, shall be deleted from the log.  To the extent privileged documents are part of not-fully-privileged families, the privilege log or correspondence accompanying each privilege log shall indicate the document production volume(s) and/or Bates range(s) to which the privilege log applies.  Privilege logs can include documents across Defendants or, conversely, Plaintiffs, so long as the privilege log makes clear the custodian of each document.

56.     For each responsive document withheld because of privilege, the Parties agree to include the following information on the privilege log:

(a)     A unique identifying number for each logged document ad seriatim starting with the number 1 (*i.e.*, the Privilege Log ID);

(b)     A field or column indicating the privilege log volume;

(c)     The date the privilege log containing the entry was served;

(d)     Custodian or source (the name of the person(s) or non-custodial source from which the document was collected);

(e)     Date of the document;

(f)     Document type (file extension or msg or similar indication of file type for e-mail);

(g)     Document Title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

(h)     Subject Line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

(i)     For Documents produced, but redacted on the ground of privilege, the starting Bates number and for other documents not produced, a numerical identifier;

(j)     Author(s);

(k)     Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

(l)     General description of the document sufficient for the receiving Party and the Court to evaluate the assertion of privilege (not required for documents that have been redacted and have populated Redacted metadata field and the general description of the document is clear on the face of the document);

(m)    The basis for the privilege claim (e.g., attorney-client; work product); and

(n)     Released: field shall be populated if a document is released from the log.

57.     **Privilege Log Format.**  Privilege logs shall be produced in native Excel format. The Parties shall provide a list of identified outside and in-house counsel (and their respective staff and agents) whose names appear on the privilege log.  This list may be supplemented as needed.

58.     **Privilege Log Descriptions of Document Families.**  Only privileged documents will be logged on the privilege log.  For example, if a parent document is privileged and the attachments are not privileged, only the parent will be logged on the privilege log and withheld.

The withheld parent document will be produced as a slip-sheet attached to the non-withheld attachments to keep the family context.  The slip-sheet will receive a Bates number and be referenced on the log.  To the extent a non-privileged attachment to a privileged communication can be produced without revealing the privileged communication, that non-privileged attachment shall be produced with the slip sheet as indicated.  In instances where a limited portion of the parent Document is privileged, the parent will be redacted and produced along with non-privileged attachments.  If an attachment is wholly privileged but the parent document is not privileged, the attachment will be slip-sheeted and produced along with the parent and any other non-privileged attachments in the family.

59.    **Documents to Be Excluded from Privilege Log.**  The following are presumptively privileged and shall not be logged: (1) communications regarding this litigation or regulator inquiries between a Party (or its agent) and outside counsel (or an agent of such counsel working under their direction or supervision) following March 6, 2023, when MCNA became aware of the unauthorized access to certain MCNA systems that gave rise to this litigation (the "Data Incident"); (2) communications regarding this litigation or regulator inquiries between and among outside counsel for a Party after March 6, 2023; (3) work product created by outside counsel after March 6, 2023, and (4) communications between Plaintiffs and their outside counsel in this litigation, regarding the Data Incident.  Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

60.    If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

## VII.    **MISCELLANEOUS PROVISIONS**

61. **Impact of Order on Other Obligations.**  Nothing in this Order shall affect the preservation requirements set forth in previous orders, subsequent orders, or any other preservation obligations of the Parties for these proceedings or for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.  By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

62. **Corporate Designee Testimony.**  Due to the size and complexity of this matter, to the extent the Parties were unable to facilitate the full exchange of information in connection with their Rule 26(f) conference, the Parties agree to cooperate regarding the prompt scheduling of a Rule 30(b)(6) deposition concerning topics particular to ESI and the matters referenced herein.

63. **Documents Produced by Parties—Presumption of Authenticity.**  To reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents, or contractors, so long as the agent or contractors' work was performed in connection with a project, assignment, or clinical trial sponsored by the producing Party. No further evidence to establish authenticity need be provided.

64. **Third-Party Data.**  The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

65. **Effect of Order.**  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown.  Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action regarding any discovery ruling made by the Court in this matter.

66.   **Good Faith Compliance and Conferral Obligation.**   The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.  If the Parties cannot reach agreement, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, on June 14, 2024.

_Alicia O. Valle_

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

AGREED AND STIPULATED TO BY:

By: _Stephanie A. Casey_
Stephanie A. Casey FBN 97483
**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
scasey@colson.com
_Liaison Counsel for Plaintiffs_
_and Putative Classes_

Jeff Ostrow FBN 121452
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
T: (954) 332-4200
ostrow@kolawyers.com

Pete Prieto FBN 501492
**PODHURST ORSECK P.A.**
One S.E. 3rd Avenue, Ste. 2300
Miami, Florida 33131
T: (305) 358-2800
pprieto@podhurst.com
_Interim Co-Lead Counsel for Plaintiffs_
_and Putative Classes_

By: _Allen P. Pegg_
Allen P. Pegg FBN 597821
**HOGAN LOVELLS US LLP**
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
T: (305) 459-6500
F: (305) 459-6550
allen.pegg@hoganlovells.com

Allison Holt Ryan (_pro hac vice_)
Alicia J. Paller (_pro hac vice_)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street NW
Washington, DC 20004
T: (202) 637-5600
F: (202) 637-5901
allison.holt-ryan@hoganlovells.com
alicia.paller@hoagnlovells.com
_Counsel for Defendants Managed_
_Care of North America, Inc. d/b/a_
_MCNA Dental, MCNA Insurance Co.,_
_and Healthplex, Inc._

**EXHIBIT A**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.) | All |
| ALL CUSTODIANS | All persons or data where the document was found prior to deduplication. | |
| BEGDOC | Bates (number) of the first page of the document. | All |
| ENDDOC | Bates number of the last page of the document. | All |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type. | All |
| FILEEXT | File extension. | E-document, Email |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and  file  source extension. If an email extracted from a container, e.g., from a .pst file, it should contain the name and location of the email container, and the folder within the container from which the email was collected | E-document, Email |
| ALL FILEPATHS | The locations where copies of the item were located at the time of collection | E-document, Email |
| NATIVEFILELINK | For documents provided in native format only | All |

| Field | Definition | Doc Type |
|-------|-----------|----------|
| TEXTPATH | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| FAMILY DATE | If the document was part of a family, e.g., an email attachment, the date of the parent document | E-mail, E-Document |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | E-mail |
| DATESENT (mm/dd/yyyy hh:mm:ss AM) | Date Sent | E-mail |
| DATERCVD (mm/dd/yyyy hh:mm:ss AM) | Date Received | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 hash value | All |
| TITLE | Title provided by user within the document | E-document |
| FILENAME | File name | E-document |
| ORIGFILENAME | Original file name | E-document |
| AUTHOR | Creator of a document | E-document |
| DATECRTD (mm/dd/yyyy hh:mm:ss AM) | Creation Date | E-document |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-document |
| LASTMODD (mm/dd/yyyy hh:mm:ss AM) | Last Modified Date | E-document |

| Field | Definition | Doc Type |
|---|---|---|
| DocumentType | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. | All |
| Importance | High Importance - indicates Priority E-mail message. | E-mail |
| Page Count | Page count or image count | All |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents. "No" or empty for un-redacted documents. A party may include two "Redacted" fields—i.e., one for native redactions; one for imaging redactions. | All |
| ProdVol | Production value number. | All |
| ProdDate | Date production volume produced by producing party. If this is not knowable on the date the production is processed, the production date instead can be included in a cover letter accompanying the production. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| HASHIDDENTEXT | Y, N or empty | Y if a Word document with hidden text |
| HASHIDDENSLIDES | Y, N or empty | Y if a PowerPoint document with hidden slides |
| HASSPEAKERNOTES | Y, N or empty | Y if a PowerPoint document with hidden slides (if field not reasonably available, permissible to identify existence of speaker notes using the "HASHIDDENTEXT" field) |
| HASHIDDENROWS | Y, N or empty | Y if an Excel document with hidden rows |
| HASHIDDENCOLUMNS | Y, N or empty | Y if an Excel document with hidden columns |
| HASHIDDENWORKSHEETS | Y, N or empty | Y if an Excel document with hidden worksheets |