UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61065-CIV-SINGHAL

DONNA CROWE, *et al.*, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

MANAGED CARE OF NORTH AMERICA, INC. d/b/a MCNA DENTAL, MCNA INSURANCE COMPANY d/b/a MCNA DENTAL, and HEALTHPLEX, INC.,

Defendants.

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**[1]

**THIS CAUSE** comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval (the "Motion") (DE [425])[2] requesting entry of an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing Class Counsel for the Settlement Class; (v) approving the form of Notices and the Notice Program; (vi) approving the Claim Form and the Claim Process; (vii) appointing the Settlement Administrator; (viii) establishing procedures for members of the Settlement Class to opt-out of or object to the Settlement; and (ix) scheduling a Final Approval

[1] The Court generally adopts the language proposed by Plaintiff with some alterations. It bears noting that the Court maintains some hesitation as to the size and scope of the Settlement Class in light of Eleventh Circuit cases *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021) and *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023). But the Court is prone to respect a settlement agreement reached by opposing parties negotiating at arm's-length, especially after such rigorous litigation as the parties have engaged in here. The Court adopts the language suggested by the parties and preliminarily approves the settlement. The Court's reservations can be addressed at a later point.

[2] All capitalized terms used herein have the same meanings as those defined in Section II of the Settlement Agreement attached to the Motion for Preliminary Approval as Exhibit A.

Hearing on whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs (to be filed later).

Having carefully reviewed the proposed Settlement and its exhibits, all relevant filings, and the record, the Court finds the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, the proposed Notice Program and Claim process should be approved, and Class Representatives, Class Counsel, and the Settlement Administrator should be appointed. Accordingly, the Motion is granted as set forth herein.

## I. BACKGROUND

The procedural and factual background of this Action outlined in the Motion (DE [425]) is incorporated herein.

The Settlement provides substantial benefits with considerable value, including two years of Medical Data Monitoring for all Settlement Class Members, as well as the ability for Settlement Class Members to submit a Claim to obtain up to $2,500.00 for Documented Out-of-Pocket Losses incurred from fraud and/or identity theft relating to the Data Incident. These Settlement Class Member Benefits, along with Settlement Administration Costs, and attorneys' fees and costs are payable by Defendants. In addition to paying for those Settlement Class Member Benefits, the Settlement also reflects that Defendants have undertaken (and will continue to undertake) Business Practice Changes following the Data Incident and the filing of the Complaint in this Action.

Plaintiffs now seek Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. Defendants do not oppose the relief sought in the Motion for Preliminary Approval and agree that the Court should grant Preliminary Approval of the Settlement and allow Notice to issue to the Settlement Class. As further discussed below,

the Settlement falls within the range of judicial approval and includes a comprehensive Notice Program and Claim Process. As such, Preliminary Approval of the proposed Settlement is warranted.

## II. LEGAL STANDARD

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id.* In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id.* at 671–672; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representatives have standing

to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

The Court must first find that standing under Article III is met. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing . . . ."). The Eleventh Circuit applies the pleading standard at the class certification for settlement stage. *See In re Loancare Data Sec. Breach Litig.*, 2025 WL 895435, at *3 n.4 (M.D. Fla. Mar. 24, 2025).

When standing is established and certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.* Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are "that [(a)] there was no fraud or collusion in arriving at the settlement, and [(b)] that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement

is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement, *id.* at 986, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A[] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co*., 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

## III. DISCUSSION

The Court finds, for settlement purposes only and conditioned on final certification of the Settlement Class and entry of a Final Approval Order, that the Settlement Class and proposed Settlement satisfy the Rule 23(a), 23(b)(3), and 23(e) requirements, as well as the *Bennett* factors.

### A. Certification Of The Settlement Class Is Appropriate.

The Court finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23. The Court further finds that the pleading standard for Article III standing has been satisfied for purposes of this Settlement.

The Court therefore provisionally certifies the following Settlement Class:

All living individuals residing in the United States who were sent a notice of the Data Incident stating that their Private Information was potentially impacted as a result of the Data Incident.[3]

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

1. The Rule 23(a) Factors Are Satisfied.

   i. Rule 23(a)(1) - Numerosity

Rule 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate" and "more than forty is adequate." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes millions of individuals. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members). The joinder of millions of Settlement Class Members would certainly be impracticable, so numerosity is satisfied.

   ii. Rule 23(a)(2) - Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution—which means that

---

[3] The term "Data Incident" must be defined for the Settlement Class. The operative pleading (DE [164]) suggests the following: A security breach on or about February 26, 2023, wherein hackers first gained access to Defendants' network and stole data containing patients' full name, address, date of birth, telephone number, email address, Social Security number, driver's license number, government-issued ID number, health insurance information (including plan information, insurance company, and member number), Medicaid-Medicare ID number, information about medical care or treatment (visits, dentist name, doctor name, past care, x-rays/photos, medicines, and treatment), and bills and insurance claims.

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation modified).

The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2025 WL 2675178, at *5-6 (S.D. Fla. Sept. 17, 2025) ("Plaintiffs and Settlement Class members all had their Private Information impacted by the Data Incident."); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F. Supp. 3d 1203, 1215 (S.D. Fla. 2025); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024) (commonality satisfied because claims turn on adequacy of defendants' data security to protect Personally Identifiable Information and Protected Health Information); *see also Equifax*, 999 F.3d at 1274–75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiffs and Settlement Class Members all had their Private Information potentially impacted by the Data Incident. Plaintiffs' claims turn on whether Defendants' data security environment, or their practices or procedures related to the collection of sensitive data was reasonably adequate to protect Plaintiffs' and the Settlement Class Members' Private Information. These issues are common to the Settlement Class and are alleged to have injured all Settlement Class Members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class Members and can therefore be fairly resolved, for purposes of settlement, for all

Settlement Class Members at once. Thus, commonality is satisfied.

iii. Rule 23(a)(3) - Typicality

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). Typicality under Rule 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Prado*, 221 F.3d at 1279; *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (citation modified); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiffs' interests are aligned with the Settlement Class Members in that they all were sent a notice letter stating that their Private Information may have been impacted in the Data Incident and were therefore all potentially affected by the same purportedly inadequate security that allegedly harmed Settlement Class Members. Their claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Mednax*, 2024 WL 1554329, at *4.

iv. Rule 23(a)(4) - Adequacy

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy

relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314–15 (S.D. Fla. 2001). The "principal factor . . . is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (citation modified); *Fortra*, 2025 WL 2675178, at *6-7; *Fortra*, 794 F.Supp.3d at 1216; *Mednax*, 2024 WL 1554329, at *5.

Here, like all Settlement Class Members, Plaintiffs have claims against Defendants arising from the Data Incident that allegedly impacted their Private Information and were similarly allegedly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same legal issues and fact issues as the claims of the Settlement Class as a whole. Thus, Plaintiffs have the same interests in recovering damages and other relief as those of the Settlement Class that Plaintiffs seek to represent. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other case activities, reviewing filings, promptly providing documents and information to Class Counsel, responding to document requests, interrogatories, and requests for admissions, sitting for depositions, acting in the best interest of the Settlement Class, and accepting the classwide Settlement. Plaintiffs are committed to continuing to assist Class Counsel through Final Approval.

Accordingly, Plaintiffs have no conflicts with the Settlement Class and have demonstrated their adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and

development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *Fortra*, 2025 WL 2675178, at *7 (quoting *Fortra*, 794 F.Supp.3d at 1216 (quoting *Mednax*, 2024 WL 1554329, at *5)).

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy. *See Mednax*, 2024 WL 1554329, at *5 ("Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators."). Class Counsel heavily litigated this Action, highlighted by preparing comprehensive pleadings which survived two motions to dismiss; engaging in extensive written discovery, which included reviewing tens of thousands of pages of Defendants' documents and other electronically stored information; taking and defending dozens of fact and expert depositions; working with class certification and merits experts who provided affirmative and rebuttal opinions; fully briefing class certification; filing and responding to *Daubert* motions to exclude experts; complying with Court orders and requirements; and participating in multiple mediations and negotiations that resulted in this Settlement. *See Fortra*, 2025 WL 2675178, at *7; *Fortra*, 794 F.Supp.3d at 1216. Defendants had moved for summary judgment, and the Parties were potentially on the eve of trial when the Action resolved. The adequacy requirement is therefore met.

2. <u>The Rule 23(b) Factors Are Satisfied.</u>

Having found all Rule 23(a) factors are satisfied, the Court proceeds to address at least one subsection of Rule 23(b)—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3). When determining if Rule 23(b)(3) is met, the court may consider that the class will be certified for settlement purposes only, so a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

i. Predominance

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id.* at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (quoting *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023) (cleaned up). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendants. *Id*. at 312; *Fortra*, 2025 WL 2675178, at *8; *Fortra*, 794 F.Supp.3d at 1217; *Mednax*, 2024 WL 1554329, at *5. All Settlement Class Members had their Private Information potentially compromised in the Data Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and

they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Fortra*, 2025 WL 2675178, at *7 (quoting *Fortra*, 794 F.Supp.3d at 1217 (quoting *Mednax*, 2024 WL 1554329, at *5)). The predominance requirement is therefore satisfied.

B. Superiority

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up); *Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 794 F.Supp.3d at 1217, and *Mednax*, 2024 WL 1554329, at *5). Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted.

1. The Article III Standing Requirement is Met.

To demonstrate Article III standing, plaintiffs must allege that they each "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part

of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado*, 221 F.3d at 1279). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *Equifax*, 999 F.3d at 1261 n.8; *see also Fortra*, 2025 WL 2675178, at *8 (citing *Fortra*, 794 F.Supp.3d at 1218, and *Equifax*, 999 F.3d at 1261 n.8). Rather, the Eleventh Circuit applies the pleading standard at this stage. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254 (11th Cir. 2023) ("For purposes of this appeal, we assume without deciding that the applicable standard is a pleading standard."); *In re Loancare Data Sec. Breach Litig.*, 2025 WL 895435, at *3 n.4 (M.D. Fla. Mar. 24, 2025); *Mednax*, 2024 WL 1554329, at *4 n.2 (citing standing analysis from order on motion to dismiss when preliminarily approving class settlement).

This Court previously held that Plaintiffs' allegations that a criminal ransomware group accessed their Private Information and published it to its data leak site, in addition to their allegations of emotional distress and time spent responding to the data breach, plausibly alleged cognizable injury. *See Crowe et al. v. Managed Care of North America, Inc., et al.*, No. 0:23-cv-61065, (DE [160], at 8-10) (S.D. Fla. Aug. 16, 2024). Likewise, this Court held that Plaintiffs had adequately alleged traceability, which is sufficient to establish Article III standing at the pleading stage. *Id.* at 6-8. Article III standing has thus been satisfied for settlement purposes.[4] *See also Mednax*, 2024 WL 1554329, at *4 n.2.

C. <u>Preliminary Approval of the Settlement Is Warranted.</u>

Next, the Court must preliminarily determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors.

[4] The Court notes that Defendants reserve all rights to challenge standing should the Settlement not be finally approved.

At this juncture, "[t]he court's primary objective . . . is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021) (quoting William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (5th ed. Supp. 2020)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith*, 2010 WL 2401149, at *2. The Court finds the Settlement satisfies the requirements of Rule 23(e) as well as the *Bennett* factors. The Court will address each factor in turn.[5]

1. Rule 23(e)(2)(A) – Adequacy of Representation

Class Counsel have adequately represented the Settlement Class's interests for purposes of Preliminary Approval of the Settlement through the extensive litigation efforts described in the Motion for Preliminary Approval and discussed in this Order. Additionally, Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class, demonstrating their adequacy. Plaintiffs have the same interest in the Settlement relief as do Settlement Class Members, and the absent Settlement Class Members have no diverging interests. Accordingly, the first Rule 23(e)(2) factor weighs heavily in favor of granting Preliminary Approval because both Class Counsel and the Class Representatives have adequately represented the Settlement Class. *See Fortra*, 2025 WL 2675178, at *9; *Fortra*, 794 F.Supp.3d at 1219; *Mednax*, 2024 WL 1554329, at *6.

2. Rule 23(e)(2)(B) and *Bennett* Factor 6 – Arm's Length Negotiations

[5] The fifth *Bennett* factor—opposition to the Settlement, if any— cannot be discerned at this time because Notice has not yet been given to the Settlement Class. *See Mednax*, 2024 WL 1554329 at *7.

The Court finds the Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *See Fortra*, 2025 WL 2675178, at *10; *Fortra*, 794 F.Supp.3d at 1219-20; *Mednax*, 2024 WL 1554329, at *6. The Parties engaged in intense litigation for nearly three years, including having mediated with mediators multiple times. Throughout the stages of settlement negotiations, the Parties conducted thorough factual and legal investigation—including extensive motion practice and discovery—allowing them to fully understand the claims, defenses, and risks of continued litigation. The Settlement was reached after several sessions with an experienced mediator and then subsequent negotiations between experienced counsel only after the parties conducted extensive written discovery and document review, took numerous fact and expert depositions, fully briefed class certification, fully briefed some *Daubert* motions and partially briefed others, Defendants moved for summary judgment, and the case was scheduled for trial.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Fortra*, 2025 WL 2675178, at *10 (quoting *Fortra*, 794 F.Supp.3d at 1220 (quoting *Mednax*, 2024 WL 1554329, at *6)).

3. <u>Rule 23(e)(2)(C) and *Bennett* Factors 1-4 – Adequacy of Settlement Relief</u>

The Court finds, considering the likelihood of success at trial and the complexity, expense, and duration of the litigation, that the relief provided is reasonable. Continued litigation against Defendants poses significant risks that make any recovery for the

Settlement Class uncertain. "Data breach class actions are risky cases." *Fortra*, 2025 WL 2675178, at *10 (quoting *Fortra*, 794 F.Supp.3d at 1220 (quoting *Mednax*, 2024 WL 1554329, at *7)); *see also Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . . [They] are particularly risky, expensive, and complex.") (citation modified); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). Success on Plaintiffs' pending motion for class certification and Defendants' motion for summary judgment, followed by a lengthy trial depending on the outcome of those motions, would be required before Settlement Class Members could recover. And given the complexity of the claims and arguments here, success was far from certain. Winning and maintaining class certification through trial "is another over-arching risk" as well. *Fortra*, 2025 WL 2675178, at *10 (quoting *Fortra*, 794 F.Supp.3d at 1220 (quoting *Mednax*, 2024 WL 1554329, at *7)). Class certification has been denied in other data breach cases. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2025); *Theus v. Brinker, Int'l, Inc.*, 2025 WL 1786346 (M.D. Fla. June 27, 2025). "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Fortra*, 2025 WL 2675178, at *10 (quoting *Fortra*, 794 F.Supp.3d at 1220 (quoting *Mednax*, 2024 WL 1554329, at *7)). The parties' decision to mitigate this risk weighs heavily in favor of preliminary approval.

Despite the risks involved with further litigation, the Settlement provides substantial benefits that make Settlement Class Members virtually whole for past injuries and protects them into the future, including two years of Medical Data Monitoring for all

Settlement Class Members, the ability to Claim a Cash Payment for Documented Out-of-Pocket Losses, and Business Practice Changes for all Settlement Class Members. *See* (DE [425-1] at ¶ 89); *Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). All Settlement Class Members are given an equal opportunity to receive the Settlement Class Member Benefits. Specifically, each Settlement Class Member will automatically receive a code for two years of CyEx's Medical Shield Complete which includes $1,000,000.00 in insurance coverage and all have the option to be reimbursed for Documented Out-of-Pocket Losses up to $2,500.00. (DE [425-1] at ¶ 89).

The Court further finds the Claim Process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Medical Data Monitoring activation codes on their Notice to be activated after the Effective Date and those who submit Valid Claims will receive Cash Payments by electronic means. The Settlement Administrator is highly qualified to manage the entire process. "Thus, the method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (quoting *Fortra*, 794 F.Supp.3d at 1220 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Further, Class Counsel intend to request up to $6,400,000.00 in attorneys' fees, plus reimbursement of up to $1,313,000.00 for litigation costs, which Defendants agree to pay, subject to this Court's approval. Class Counsel represent in the Motion for Preliminary Approval that they will ask the Court to apply a risk-enhanced lodestar analysis to the attorneys' fee request pursuant to the Agreement with the Defendants to pay those fees. The lodestar method has been recognized as appropriate in this Circuit when the defendant contractually agrees to pay class-action attorneys' fees awarded by

the court. *In re Home Depot, Inc., Customer Data Sec. Breach Litig*., 931 F.3d 1065, 1078-82 (11th Cir. 2019). Class Counsel notes that the Court has the discretion to perform a percentage cross-check against the Value of the Settlement to evaluate their requested attorneys' fee award.

The attorneys' fees appear reasonable to the Court under a preliminary review of the relevant factors outlined in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which have been adopted by the Eleventh Circuit. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3, 775 (11th Cir. 1991). The Court notes the extensive time and labor expended by Class Counsel to prosecute the class claims in this Action on a contingent fee basis, which required the skill of experienced class action attorneys to litigate complex and difficult fact, class certification, and liability issues—under evolving data breach jurisprudence—to achieve the results obtained. The Court will evaluate the request again at Final Approval once Class Counsel file their Application for Attorneys' Fees and Costs. Class Counsel and Defendants negotiated and reached an agreement regarding attorneys' fees and costs only after reaching an agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or costs award to Class Counsel.

Finally, the Parties have advised the Court of the separate agreement with the Settlement Administrator for Defendants' payment of the Settlement Administration Costs and the agreement with CyEx, Inc. for Defendants' payment of the Medical Data Monitoring for all Settlement Class Members. The Court therefore finds Rule 23(e)(2)(C)'s requirements and the first four *Bennett* factors are met.

4. <u>Rule 23(e)(2)(D) – Equitable Treatment of Settlement Class Members</u>

All Settlement Class Members are given a Medical Data Monitoring activation code and all have an equal opportunity to claim Cash Payments. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Fortra*, 2025 WL 2675178, at *11 (quoting *Fortra*, 794 F.Supp.3d at 1221 (quoting *Mednax*, 2024 WL 1554329, at *7)).

Accordingly, the Court finds the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

D. Appointment of Class Representatives and Class Counsel Is Appropriate.

For the reasons discussed above, the Court finds Plaintiffs have adequately represented the Settlement Class throughout this Action. The Court therefore designates and appoints Plaintiffs as Class Representatives.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B).

The Court finds proposed Class Counsel have expended an extensive amount of time, effort, and expense investigating the Data Incident and in litigating this Action. Further, it is clear from their track record of success, as observed by the Court when it appointed them Interim Co-Lead Counsel and Liaison Counsel, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints Jeff

Ostrow, Peter Prieto, and Stephanie Casey as Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel and will adequately protect the interests of the Settlement Class.

E. The Notice Program Is Sufficient.

Notice of a proposed settlement must be the "best notice that is practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds the form, content, and method of giving notice to the Settlement Class as described in the Notice Program, including the forms of Email Notice, Postcard Notice, Publication Notice, Long Form Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form (a), constitutes the best practicable notice to the Settlement Class; (b) is reasonably calculated, under the circumstances, to apprise to apprise Settlement Class Members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in

a reasonable manner." The Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel will apply to the Court for an award of attorneys' fees of up to $6,400,000.00, plus reimbursement of costs.

Accordingly, the Notice Program satisfies the requirements of Rule of Civil Procedure 23(c)(2)(B) and due process and is thus approved. *See Fortra*, 2025 WL 2675178, at *12; *Fortra*, 794 F.Supp.3d at 1222.

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Upon preliminary review, the proposed Settlement is fair, reasonable, and adequate; the Settlement Class should be certified for Settlement purposes; and the Notice Program satisfies the requirements of Rule 23 and due process. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Settlement is **PRELIMINARILY APPROVED**, as follows:

### A. Final Approval Hearing

The Court will hold a Final Approval Hearing for the following purposes: (a) to determine whether the proposed Settlement, on the terms and conditions provided for in the Settlement, is fair, reasonable, and adequate, and should be approved by the Court; (b) to determine whether an order of Final Judgment should be entered dismissing the Action on the merits and with prejudice; (c) to determine whether the proposed plan of allocation and distribution of the Settlement Class Member Benefits is fair and reasonable and should be approved; (d) to determine whether the requested award of attorneys' fees and costs should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement. The Court may elect to hold the Final Approval Hearing virtually by Zoom or some other virtual application, and

if it does, the instructions on how to attend shall be posted by the Settlement Administrator on the Settlement Website.

The Court will defer ruling on attorneys' fees and costs until the Final Approval Hearing when considering Class Counsel's Application for Attorneys' Fees and Costs. Plaintiffs shall file their Motion for Final Approval no later than 45 days before the initial Final Approval Hearing date. At the Final Approval Hearing, the Court will hear argument from the Parties, and in the Court's discretion, will also hear from any Settlement Class Members (or their counsel) who timely object to the Settlement or to the Application for Attorneys' Fees and Costs.

B. Appointment of Settlement Administrator

As agreed by the Parties, the Court appoints Kroll Settlement Administration LLC as the Settlement Administrator to supervise and administer the Notice Program and Claim Process, as well as to administer the Settlement should the Court grant Final Approval. All Settlement Administration Costs, totaling no more than $2,000,000.00, will be paid by Defendant.

C. Approval of Settlement Class Notice Program and Notice Forms

The Court approves, as to form and content, the Notice Program, including the Email Notice, Postcard Notice, Publication Notice, and Long Form Notice, substantially in the forms attached as Exhibits 1-4 to the Agreement. Non-material modifications to these exhibits may be made without further order of the Court. The Settlement Administrator is directed to carry out the Notice Program and to perform all other tasks that the Settlement requires. The date and time of the Final Approval Hearing shall be posted on the Settlement Website and included in the Notices before they are emailed, mailed, or published.

D. Approval of Claim Form and Claim Process

The Court approves the Claim Form and the Claim Process to be implemented by the Settlement Administrator. The Claim Form, Exhibit 5 to the Agreement, is straightforward and easy to complete, allowing each Settlement Class Member to claim the Cash Payment and provide supporting documentation. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form. Should the Court grant Final Approval to the Settlement, Settlement Class Members shall be bound by its terms even if they though do not submit Claims.

The Court directs the Settlement Administrator to disseminate the Notices and Claim Form as approved herein. Class Counsel and Defendants' Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this order or the Settlement, including making, without the Court's further approval, minor form or content changes to the Notices and Claim Form they jointly agree are reasonable or necessary.

E. Opt-Outs from the Settlement Class

The Notice shall provide that any member of the Settlement Class who wishes to opt out of the Settlement must request exclusion in writing within the time and manner set forth in the Notice. The Notices shall provide that opt-out requests must be sent to the Settlement Administrator and be postmarked no later than 30 days before the initial date set for the Final Approval Hearing. The opt-out request must be personally signed by the Settlement Class Member and contain the Settlement Class Member's name, postal address, email address (if any), and telephone number; the name of this Action; and a statement that indicates a desire to be excluded from the Settlement Class. The letter can

simply say, "I hereby elect to opt out of the Settlement in *Crowe v. MCNA*." If submitted by mail, an opt-out request shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope. If submitted by private courier (e.g., Federal Express), an opt-out request shall be deemed to have been submitted on the shipping date reflected on the shipping label.

Any Settlement Class Member who timely and validly opts out from the Settlement Class shall, provided the Court grants Final Approval: (a) be excluded from the Settlement Class by order of the Court; (b) not be a Settlement Class Member; (c) not be bound by the terms of the Settlement; and (d) have no right to the Settlement Class Member Benefits. Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

F. Objections to the Settlement

The Notice shall also provide that any Settlement Class Member who does not opt out from the Settlement Class may object to the Settlement and/or the Application for Attorneys' Fees and Costs. Objections must be filed with the Clerk of the Court and mailed to the Settlement Administrator, Class Counsel, and Defendant's counsel. For an objection to be considered by the Court, the objection must be submitted on behalf of a Settlement Class Member no later than 30 days before the initial date set for the Final Approval Hearing. When submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

For an objection to be considered by the Court, the objection must also set forth:

a. the objector's full name, mailing address, telephone number, and email address (if any);

b. all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c. any objector or objector's counsel who uses Artificial Intelligence to assist in drafting the objection must disclose its use and what platform(s) was used;

d. the number of times the objector has objected to a class action settlement within the five years preceding the date the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees and Costs;

f. the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

g. whether the objector and/or objector's counsel will appear at the Final Approval Hearing;

h. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

i. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

j. the objector's signature (an attorney's signature is not sufficient).

The Parties' counsel may conduct limited discovery on any objector, including taking depositions and propounding document requests, prior to the Final Approval Hearing.

Any Settlement Class Member who opts-out of the Settlement and also objects to the Settlement, regardless of which was submitted first, will be deemed to have opted-out and the objection will be overruled. Any Settlement Class Member who does not make an objection in the exact manner provided herein shall be deemed to have waived the right to object to any aspect of the Settlement and/or to the Application for Attorneys' Fees and Costs and, if final judgment is entered, shall forever be barred and foreclosed from raising such objections in any proceeding and from challenging or opposing, or seeking to reverse, vacate, or modify, the Final Judgment or any aspect thereof.

G. Termination of the Settlement and Use of this Preliminary Approval Order

If the Settlement is not finally approved by the Court, or is terminated, canceled, or fails to become effective for any reason, or the Effective Date does not occur, this order shall become null and void and shall not prejudice the rights of Plaintiffs, the Settlement Class Members, and Defendants, all of whom shall be restored to their respective positions in the Action as provided in the Agreement.

H. Bar from Continued Claims

Upon the entry of this order, with the exception of Class Counsel, Defendants'

Counsel, Defendants, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all Settlement Class Members shall be provisionally enjoined and barred from asserting any claims or continuing any litigation against Defendants and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision as to whether to grant Final Approval of the Settlement.

I. Jurisdiction

For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings to ensure effectuation thereof in accordance with the Settlement preliminarily approved herein and the related orders of this Court.

J. Schedule

The Court hereby sets the following schedule of events in connection with the Settlement's administration and Final Approval Hearing:

| Event | Date |
|---|---|
| **Notice Program Begins** | No later than 30 days after Preliminary Approval |
| **Notice Program Complete** | 45 days before the initial scheduled Final Approval Hearing |
| **Deadline to File Motion for Final Approval and Application for Attorneys' Fees and Costs** | 45 days before the initial scheduled Final Approval Hearing |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing |
| **Claim Form Deadline** | 30 days before the initial scheduled Final Approval |

| | |
|---|---|
| | Hearing |
| **Final Approval Hearing** | **November 16, 2026, at 2:00 pm EST** |

Unless specified otherwise by future order, the Final Approval Hearing will take place in person in **Courtroom 110 at the United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 14th day of July 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF